For 19-1645, Jennifer Garza v. Lansing School District, et al. Argument number 113-95. Mr. Todd Bowley. Good morning. Good morning. May it please the court, my name is Todd Bowley and I represent the plaintiffs and the appellants in this case. With me is my co-counsel Channing Robinson Holmes. I've already reserved four minutes for rebuttal. I want to, because of my limited time, I want to focus on two issues that are raised in the appeal. The first is the order granting summary judgment in favor of three administrators in the order granting the motion to dismiss the claims against Principal Sherry Bacon. Now yesterday, this circuit issued a decision that is highly relevant to this case and I think supports our position in this appeal, especially on the motion for summary judgment. In Foster v. University of Michigan, this court reversed summary judgment in a case brought by a student who claimed that the university was deliberately indifferent to complaints she made about a fellow student who was harassing her. The district court granted summary judgment because the university had responded to her complaints. However, this court reversed and held that summary judgment was improper because a reasonable jury could find that the response of the university was clearly unreasonable under the circumstances. In particular, I want to direct the court to the passage of the decision beginning at page 23. There the court noted that the harasser had violated a no contact order and then indicated his disdain for the complaint and the investigation process. And the court concluded that the response of the university was insufficient and had the effect of encouraging the harasser to continue his conduct. And we have similar facts in our case. Now Foster is a Title IX case, but as we pointed out in our briefs, the standard for deliberate indifference under Title IX and Section 1983 are the same. Now what I get from the Foster case is the following. Could a jury look at the facts in our case and conclude that the administrators were not deliberately indifferent? That their response was not clearly unreasonable? And the answer is, sure. But I submit there is more than sufficient evidence to support a verdict for the plaintiffs and the judgment below should be reversed. In fact, I submit that the facts in Foster are much closer than the facts in this case. How do you line up the phrasing clearly unreasonable with the cases that say negligence isn't enough? Again, in a very simple minded way, we usually say, you know, a reasonable man doesn't commit negligence. If he commits negligence, he's acting unreasonably. Granted, these are different areas of law, though they're quite similar. So how do you read those standards together? I just think that there's always that tension in the concept of deliberate indifference. In that, you know, it's on the one hand, it has to be more than negligence. And on the other hand, if you, you know, there's various phrases that we see in the cases from this circuit that, you know, if you basically stick your head in the sand, and divert your eyes for fear that you don't see. Turning a blind eye. Right, turning a blind eye. They don't use the clearly, I mean, if you were to take this to trial, what instructions would you give the jury? Would you say simply, you know, carte blanche, if these people were clearly unreasonable, they're liable? You know, I haven't looked at the jury instructions recently, but I believe that the instructions on deliberate indifference are very, you know, lay out, you know, on the one hand, you know, just being careless, just being negligent isn't sufficient. You know, on the other hand, if, and I think that the, this court has said repeatedly, such as in Roseville, Doe versus Warren schools, Howard versus Knox County, that if you're confronted with a situation where there's a strong likelihood that the teacher is going to continue his abusive conduct, if your response is such that your response is clearly unreasonable or deliberately indifferent under those circumstances, then liability can attach. So, you know, that's why we have to proceed it at this, from the standpoint of look at the record as a whole, and is this record, does this record have facts that would support a conclusion of deliberate indifference? And I guess what I have to say is I've been handling cases or representing families like C.G.'s for about 10 years, and what stands out in this case is just the sheer length of time that Mr. Duvall worked while complaints were pouring in from fellow employees, from outside professionals. Let me ask you this about the, I tried to draw up an org chart of all of these people, which is one of the questions, but in sort of your summary of statement of facts, at one point you say that Duvall was abusing people, documented by Alwort, yet few of any of these incidents were ever investigated, nor were they ever reported to the proper authorities. Now that's just part of your rhetoric, but what would have been the proper authorities, because I grant you that there's a lot of finger pointing of somebody says I did this, I did that, but they did seem to eventually percolate to this H.R., and my impression is that in the ultimate, it was H.R. that got him fired. It was the guys Todd that sent the report that actually got him fired before the board, that Exhibit 19, which is the actual document. What are the proper authorities other than that? Well, to look at the facts in a chronological fashion, Principal Sherry Bacon was the first supervisor. I'm sorry, I said Todd. Troy Scott was the H.R. director who files a document with the board that gets him fired. At the very end. And I understand the cloud of who did what, and maybe I'm picking on you for the rhetoric where you say they weren't reported to the proper authorities, so who were the proper authorities? The first place would have been to do an investigation, period. Yourself. Correct. So if you were Ms. Bacon or you were Nixon, you should have done an investigation yourself? Well, there's an ability to do building level investigations, you can ask for formal investigations, you can contact law enforcement. At least one instance they did, didn't they? Well, I mean, when I say police, I mean the police in the jurisdiction. And that never happened. What do you say about the issue of legal responsibility or liability with regard to certain administrative personnel who are being sued by you who may have received complaints about this teacher, but not during the time frame of the abuse of this particular plaintiff, or who may have known about the abuse, but may not even have been employed or had been retired. And I'm thinking specifically Bacon and Robinson, and then with regard to some of these others, may or may not have known about what was occurring with this specific student. What do the case laws say about that in terms of legal liability? Well, what the case law says is that the accrual of a cause of action is determined by federal law. And under federal law, a cause of action or a claim accrues when the plaintiff becomes aware of the injury. So the claim brought against Ms. Bacon was timely. So the issue then is just one approximate causation. And if you fail to investigate at all, and if you threaten people who are making complaints, and if you destroy records of your investigations, then you hamper the ability of future supervisors to deal with this misconduct and to take action. If you have a case that has that kind of long tail, we'll call it into the future, because presumably, you know, if Mr. Duval cleaned up his act or went on doing things, it might be five years, ten years later, and Ms. Bacon is long retired to Florida. And I just think it is a question of approximate causation, and that is just something that courts, you know, deal with all the time. Let me make sure I'm understanding this reasoning. So the student who is the plaintiff here, his cause of action could not have accrued until after the actions that Mr. Duval took with respect to him. Once the cause of action has accrued and he files within the pertinent time period, this plaintiff doesn't have a cause of action until he has injury and a cause of action. Correct. But then we can look back at the whole history of alleged deliberate indifference to what was going on and bring in people who have long since been retired because this individual's cause of action against them did not accrue until after he was injured. That's correct. And so in your view, there's not a limitations period issue. There is, of course, an issue as to whether there was proximate cause with respect to the actions of each of the individuals who have been sued. Correct. I got that argument. That's your argument. That's my argument. And so in principle, you could ask for summary judgment on the basis of no proximate cause, but that's not what happened here. That's exactly right. And it's because it was decided on a motion to dismiss. Okay. What you have to do to, I know your time's up specifically, to correctly analyze the case is look at the actions or inactions of each of the individual defendants to see how those contributed to the ultimate injury to this plaintiff. That's correct. That's correct. And whether or not that chain of causation is broken somehow. Okay. Thank you. The court, please. Your Honor, Scott Mandel representing the appellees in this case. First, I want to let the court know that I'm unfortunately not able to address Foster v. United University of Michigan, which counsel just indicated was decided yesterday by this court. That's the first notice I have of that particular case. So I apologize, but I just simply cannot address that case. And if I can go on with my remarks from there, I'd appreciate that. And I think from the court's questions, the court has zeroed in on what we respectfully submit to be the real issue in the case and why the trial court Judge Quist was correct in his decision and should be affirmed. And that is that the plaintiff appellant is just unable and was unable to establish this high standard of deliberate indifference in the supervisory liability context. If you analyze the case with respect to each of the defendants and you look at each individual action of each of them, it ends up being a pretty compelling picture of whether you call it sweeping under the rug or ignoring or not following through to a conclusion, however you want to characterize it. A whole lot of allegations against Mr. Duval over an extended period of time. Certainly there was collective inaction, but there was also, if you break it down individually, you can get a pretty long list of the instances in which each of the defendants in this case did not do what they perhaps should have done to protect all students. And I appreciate that question and comment as well, Your Honor. I'm not going to argue that this is coming to this court with perfect conduct by the individual defendants in this particular case. That's not the standard. And if you start looking at the totality of what was done and start comparing that with some of the other cases that this court itself has decided, I would respectfully submit that this doesn't fall outside that specter of what the court itself has said it does not constitute deliberate indifference. You can't aggregate it. You have to look at it defendant by defendant and look at what each of them did. But I would say that looking at what each of them did, there's a pretty long list with respect to most, if not all, of them. And if I may, Your Honor, and I've done this, if you go back and you compare what Your Honor is suggesting to be that list with Claiborne and Roseville and take a look at the individuals there that this court has said summary judgment should have been properly granted, you've got as an example in Roseville a principal who had had notice that that particular teacher in Roseville, Davis, had sexually abused someone quite some time ago. That individual had actually come to that person's office of principals and complained about that. Knowing that, that principal then was aware of multiple, multiple, multiple complaints by multiple female students of sexual harassment. That principal, in the face of that knowledge, we had a father come to her and talked about his daughter being sexually abused. Her response was essentially, I don't believe it. Didn't even bother getting back to the father, let alone doing an investigation. That same principal, and comparing that with the parties in this case, went on and had multiple other girls come to her with complaints. Not only did she not do an investigation, she actually told those girls that they should not say anything about it, including to their parents, because that particular teacher might get in trouble and could even go to jail. Actually disabused that. And then after those multiple girls had complained directly to her, had another instance of another girl coming to her and complaining about it and the family complaining about it, and did not even report that up, let alone doing an investigation, did not even report it up. And that principal, Slendy, according to this court, did not rise to the level of deliberate indifference. So you can compare that principal to the parties in this case. And you have, just by way of example, I know it would take beyond my time to go through literally all of the particular supervisors here, but Martin Altward, who is the Director of Special Education, on multiple occasions reported this to Human Resources. Counsel wants to argue that it should have been reported to someone else, but you can't engraft deliberate indifference on Mr. Altward for that. That was the district's policy. I'm proud of the argument that all these, many of these defendants were reporting misdevolved to Human Resources, and Human Resources never did anything by way of investigation or recommendation of interdisciplinary action. And this went on so long and so many complaints that were referred to Human Resources that these defendants knew or should have known that once you give the complaint to Human Resources, it's going to disappear into a black hole, that nothing ever was going to happen because nothing ever did happen with these complaints. And there was just a persistent pattern in that regard, that you satisfy your responsibility by referring matter to Human Resources, knowing that nothing would happen, and precisely nothing did happen, and that occurred continually. It's such that everybody's on notice that you just get rid of it by giving it to Human Resources. Isn't that a problem on these facts? Your Honor, if I may, I understand the Court's question, but the record does not support that description of the facts. That's just not correct. What Human Resources did without question, there were investigations that's in the record. John Parks did investigations. Human Resources did suspend this teacher, Duvall. They had suspended him for, again, we can say, well, it wasn't enough, but to say that they did nothing is not in accordance with what the record says. That's the three days that was then suspended. Yes, three days, which was then lowered because the union had aggrieved that to a day. Now, again, I'm not here to say that that was perfect. When the union aggrieved it, who did they aggrieve it to and who decided it, HR itself or some board? I don't even know if that's in the record. I know as I stand here I don't want to give you an answer that's not correct. All right, it's fine. Mr. Parks did do some investigation, but the question would be how many complaints were there and how many were investigated and how many recommendations, or how many of those were even closed out, how many recommendations. It wouldn't be an exaggeration to say that nothing happened on most of the complaints that went to HR. You would at least agree with that. Well, again, from the record, I'm not disagreeing. But to say nothing would not be correct. So the HR did do something with respect to this. And, again, we've got, if you go through the record, instances where we've got others. Ms. Edna Robinson herself did an investigation, talked with multiple people in the building. You know, that was done. Mr. Elwhart. That one where she ended up saying, well, there was no support for it? Yeah, she talked to people who were very supportive of this teacher Duvall when she did that. But, again, it was an investigation. So, again, if you line this up now. Well, it's one of the allegations here is that she didn't do enough. She didn't do what she was supposed to do. Robinson. Oh, Robinson? Yeah. I understand that's an allegation. But if we look at the record itself, she referred it to HR. And, again, this is earlier, as the court's indicated in the timeline approach. She's at a different school earlier with respect to this. She referred it to HR, and she did talk to others in the building and did do an investigation. She did not sweep this under the rug. There were complaints that were made, records that were made. And when you contrast this to these other cases, the principal, her name was Slindy, in the Roseville case, who didn't even refer it. Nothing. She did nothing at all. Didn't even bother telling any of the administrators in the district. In Roseville, the court emphasized arguably the difference between action and inaction, that she didn't condone it, it says, because she didn't affirmatively do so. But then there are other cases, as your colleague said, that do say you can't just turn a blind eye. Are those simply contrary to Roseville, that the Roseville court didn't take cognizance of that line? Well, first, I don't believe that those are necessarily inconsistent with Roseville itself. And when you look at the cases themselves that are dealing with this, what I see as I'm looking at these are really kind of a direct connection between the conduct itself and what we're talking about. One of the cases they cite is this Warren Consolidated Schools case. And there you have a principal who reassigns a teacher the principal has notice of, has a history of at least alleged sexual abuse from middle school to elementary school. And the principal acknowledges that the younger students would be even more vulnerable. And he had no rationale whatsoever for that. Well, here, who made the transfer, really? Was it Robinson? Because when she was at the first school, in a sense, the ultimate outcome was, well, let's transfer him someplace else. And that was Martin Alwart, the director. Alwart, because Robinson was at the old school, but Alwart was the one who became aware enough of this to understand there was some problem, and he was the one that initiated the transfer. And Martin Alwart initiated the transfer, and compare his rationale for that with the principal in Warren Consolidated. His rationale was the Beekman Center is entirely special needs. There's little supervision for teachers. I wanted to have him, if he's going to continue with the district, in the general education where there is greater supervision. And he talked to the principal. You mean the students are less troublesome at the second school? There's more supervision. There's more direct supervision. Let me ask you one other question, and I'll ask your colleague as well. In this litigation, did HR get involved or sued? That is, as I read it, if you take the more benign view, things went up. I guess Troy Scott ultimately does get him fired, but previously there was who? She was the assistant superintendent. At any rate, as near as I could figure, there was somebody up the line in HR who decided to do nothing or very little. Did nobody want to sue them? Well, I can only tell you what happened as far as the case goes. From your point of view, nobody came after them. Well, that's not quite correct. When Plaintiff began the lawsuit, Troy Scott was named as a party in the case. Plaintiff dismissed him from the lawsuit. But Scott had already done, had Duval already been fired by the time the suit? Yeah, by the time the lawsuit was filed, Duval had never set foot. Yeah, he had done something. I'm asking the predecessors. Nobody was. No, Ashton was not a party. All right, I'll ask your colleague the same thing. Go ahead. But again, as I review these cases, what I'm seeing is you've got really to get over this hurdle of deliberate indifference. I understand the court may not like all the conduct itself. And by the questions, I know you're aware of the standard. But you have this direct connection. And the language here talks about this student. I mean, that's actually in the language itself. And there is nothing suggesting that any of these individual supervisors knew anything about this particular student, C.G. And that comes right out of the Claiborne case and also the Roseville case connecting that. And when this court has had these other cases, it is really a direct connection. You have instances where wardens in prisons have instituted policies saying you're not going to have the medical attention that you need for budgetary purposes. And for that reason, we have someone who needs that critically ends up dying because they don't get that kind of attention. We have the Petros case where you have a chief of police who had, in a police brutality case where the plaintiff had been killed by the police, they had 54 deaths in a single year. And that chief of police had acknowledged that they did have a problem. It needed to be addressed, yet did nothing. And according to that record, had basically deep-sixed this particular investigation and others. And the wards of this court had green-lighted this conduct by the police itself. And again... The problem with the way you use Roseville in your argument, the facts there are a little different. And there is language in that case that would be contrary to your argument. For example, it says that failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of students. Obviously, it comes out differently because the procedural posture of the case was different. But there is some language in that case that wouldn't really be terribly supportive of your position. I understand the language that the court is talking about. But then Roseville goes on to explain how that language is to be applied. Again, reading Roseville, it's very careful to talk about that. I think it brings back in, yes, here's the language, but here's how we're going to apply it in these supervised reliability cases, particularly in schools, in public schools. And that's where it specifically talks about there's nothing there that the defendants did or did not do that encouraged the teacher's abuse of this student. That's Roseville. That's what it's talking about here. And, again, it requires more. I know there's some broader language in here, but what I invite the court to do is to contrast what these individuals did. It may not have been always what this court would have wanted, especially with the benefit of hindsight, which we're told by the circuit you don't look at, the hindsight type of analysis. But you've got these individuals who did refer this on. They followed the policy itself of the district. This notion that it just simply goes into a black hole is not correct from the record. This was investigated. We have John Parks doing investigations. We have HR taking disciplinary action. We can argue that it wasn't enough, but for purposes of deliberate indifference, we have the teacher having to get additional counseling as far as anger management and the CPI training that they talk about. So it isn't that nothing was done. Now, in hindsight The problem is it went on for too many years, for years and years, and Mr. Duval was left in a position to continue to beat up and abuse these students over an elongated period of time after supervisory people and HR had knowledge. What do we do with that? You know, again, what you do is you compare that to the standard that this court has articulated, deliberate indifference. Is it enough? And I respectfully submit that you compare this with the cases this court itself has grappled with. Clareborn, I'm sorry. Go ahead and finish. Should I finish? Yes. Okay. Clareborn, again, I think had compelling and lengthy history, again, of very serious misconduct, of sexual abuse, which had happened over an extended period of time, and the principal in that instance, with this prior history with the department at DHS having found that there was validation for four of nine girls who had come forward. In light of that history and prior history, rehires this teacher to be a physical education teacher and a baseball coach. The principal in that case, with the knowledge of all that, when he goes to rehire that particular teacher, he starts to tell them what happens. I don't want to hear it. I don't want to hear it. So, again, talk about a blind eye. Then there's a history. Once that teacher goes back, first rumors, then direct complaints of someone who said, I saw this, where the teacher was sitting. Actually, that principal saw the teacher, after being rehired, sitting in the bleachers and being inappropriate with a female student, actually saw it and did nothing, other than saying, be careful. Then there's more when you look at Clareborn. Well, let me ask you this. Is there some special consideration involved in this particular case because that should be afforded to the students here? Because these were special education students, many of whom would not have the, presumably, would not have the ability to articulate the facts surrounding the abuse or to report the abuse, simply because they have various sorts of handicaps and these students had been designated special education students. So some of them might be less able to effectively report the abuse than students who are not special education students. Does that impose some sort of, would that impose some sort of special obligation on the school system or the supervisory people? School system, I think, would be a little bit different because they're not a party to the case at this point. As far as the individuals are concerned, I'm not saying it's not a factor itself, but, again, we have a situation here where they did act, they did do investigations, they did report this on. Martin Alwart actually himself advocated for discipline. He wanted this teacher to be at least suspended, minimally. That was what Martin Alwart himself had wanted. This was after which incident or at what time? You say Alwart wanted him. The CMH, after community mental health. But he did that by what, reporting up? Because as I understood it, and your colleague may correct me, he would have no power to fire or suspend a teacher. That is correct. But what did he do? He did not. He made the recommendation to HR. Exactly. So we have a document or an oral recommendation? We have deposition testimony that's cited in the record. Deposition of him saying I did X. Yes. But not a document. I'm not aware of any document. Just the deposition testimony himself on that. Can I come back to your question? Sure, but you might want to get toward winding up. I'm sorry. Do I have time to? Yeah, go ahead, but just don't take much time there. All right. You know, when you're talking about, okay, look at the status of these children. They were dealing with special needs with respect to that. And if you look at the case law, I started talking about Claiborne, and what I submit was a really compelling record of that principle in that instance. And I had not even finished where that was. In that case, you had a counselor telling that particular principle that she herself had reason to believe and some knowledge about that teacher acting inappropriately. And, again, nothing was done. And, again, no deliberate indifference. So there you have actual knowledge, and you have this very high standard in this court, the way it has applied it. I respectfully submit that Judge Quist made the correct decision based on the applicable law here that this does not rise to the level of deliberate indifference. Thank you. Thank you very much. Thank you. Any rebuttal? I first want to respond to Judge Boggs' question about HR. When we originally filed the complaint, we just didn't have any information about how the process went. And when we did, we did attempt to amend the complaint to add a claim against the district based on the district's failure to effectively discipline Mr. Duvall, and that's an issue that we've raised in our appeal. My colleague goes back to the Roseville case. Your answer there was that presumably it's when you wanted to bring in the district, but you didn't try to bring in the HR director. Am I right? Analytically, this was Atchison during most of the time, Jensen before that, but Atchison. That is, if there was somebody in HR who messed up, it probably would have been Atchison. Correct. Okay. We didn't have the facts to make that claim. And you didn't want to bring in Parks because he seems to have roughly done what he was directed to do. Well, there were some failures on his part, but he certainly thought that Mr. Allward would look at his report when it was clear he didn't investigate the claims of abuse. You say Allward would look at the report. Did the report go to Allward or did it go up in HR? What Mr. Allward said, I didn't look at the reports because it's not in my job duties, but other employees said these are readily available. Okay. And Mr. Parks said I could look at them. Don't let me take up your time. Go ahead. As regards to the Roseville case, we discussed that in our briefs, and I don't want to repeat myself. In Doe versus Warren, this court distinguished both Roseville and  repeated and recent as opposed to sporadic, which is what our case is. It's clear that doing, quote, something is not enough. That's the Spencer case. I mean, yes, the most recent case is the Foster case from yesterday. And also I want to correct the statement that Mr. Allward transferred Duvall to the Gardner Academy because of there be greater supervision. What he testified to was that he did that because of a, quote, firestorm of I have a limited amount of time. Are there any particular questions that the panel has that you'd like me to address? Apparently not. Okay. Let me just like to close by repeating something that Judge Clay mentioned, which is that these complaints that the defendants received about Mr. Duvall concerned students who were cognitively impaired and were essentially nonverbal. So the abuse that they received from Mr. Duvall was somebody that they looked to for protection. So that abuse was uniquely terrifying and had lasting trauma, caused lasting trauma. If school administrators cannot be held accountable for their failure to identify and control abusive employees, then there's no recourse for the most vulnerable population in our community. I ask the court to reverse the order granting the motion to dismiss, the motion for summary judgment, and the order denying the motion to amend the complaint. Thank you. Thank you very much. And the case is submitted. Thank you. Thank you.